IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| David F. McDaniel, | Civil Action No. 8:09-2418-DCN-BHH |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| Michael J. Astrue, Commissioner of Social Security, | |
| Defendant. | |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, David F. McDaniel, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

The plaintiff was 46 years old on the alleged disability onset date of March 1, 2005, and 50 years old as of the date of the decision of the Administrative Law Judge (ALJ). (R. at 49, 104.) He has a high school education and attended two years of college, but did not obtain a degree. (R. at 49, 141.) He has past relevant work as a meat cutter, retail manager and corrections officer. (R. at 72-73, 125-32, 135.) He alleged he has been disabled since March 1, 2005, due to residuals from a broken ankle, including nerve damage and traumatic arthritis, back problems, and numbness in his left arm and hand. (R. at 134, 151, 174.)

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

The plaintiff applied for disability insurance benefits on March 1, 2006. (R. at 104-06.) His application was denied in an initial determination and upon reconsideration. (R. at 78-84, 88-90.) An administrative hearing with an Administrative Law Judge was held on November 18, 2008. (R. at 45-77.) On February 17, 2009, in an unfavorable decision, the ALJ found that plaintiff was not disabled within the meaning of the Act. (R. at 7-18.) As the Appeals Council denied the plaintiff's request for review (R. at 1-4), the ALJ's decision became the Commissioner's final decision for purposes of judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1)     The claimant meets the insured status requirements of the Social Security Act through December 31, 2010
>
> (2)     The claimant has not engaged in substantial gainful activity since March 1, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> (3)     The claimant has the following severe impairments: traumatic left ankle arthritis, mechanical low back pain, obesity, depression and post-traumatic stress disorder (20 CFR 404.1521 *et seq.*).
>
> (4)     The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).
>
> (5)     After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently. The claimant can stand or walk for six hours per eight-hour workday and sit for six hours per workday, with normal breaks. The claimant can occasionally climb ramps, stairs, ladders, ropes and scaffolds, balance, stoop, kneel, crouch and crawl. He is unable to operate foot controls. The claimant can perform simple routine, repetitive tasks with occasional contact with the public.
>
> (6)     The claimant is unable to perform any past relevant work (20 CFR 404.1565).

(7) The claimant was born on October 6, 1958 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404-1563).

(8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

(9) The claimant has no skills that would transfer to other work, and transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2005, through the date of this decision(20 CFR 404.1520(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness

3

contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The plaintiff contends that the ALJ erred in failing to find him disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) finding he could perform light work; and (2) failing to accord the opinions of his treating physician controlling weight. The Court will address each alleged error in turn.

**I.     Residual Functional Capacity**

An ALJ must assess a claimant's residual functional capacity "based on all the relevant medical and other evidence." 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(3). Residual functional capacity "is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work related physical or mental activities." SSR 96-8p. Residual functional capacity is the most that a person can do, despite her impairments. *See id.*

Here, the ALJ found that the plaintiff had the residual functional capacity to do light work where he could stand or walk for six hours per eight-hour workday and sit for six hours per workday, with normal breaks and occasionally climbing ramps, stairs, ladders, ropes, and scaffolds, balance, stoop, kneel, crouch, and crawl. (R. at 13-17.) The ALJ found that

5

he was unable to operate foot pedals and could perform simple, routine, repetitive tasks with occasional contact with the public. *Id.*

The plaintiff first contends that the ALJ made certain errors in concluding that he could perform the demands of light work. Specifically, the plaintiff argues that the ALJ unadvisedly relied on the opinions of two state agency physicians, Drs. George Chandler and William Hopkins, to conclude that the plaintiff could stand or walk for 6 hours per eight hour workday. (R. at 311, 331.) Dr. Chandler and Hopkins found that the plaintiff could perform a range of medium work. (R. at 310-17, 330-37.) The plaintiff complains that these opinions were almost entirely based on a prior Functional Capacity Examination (FCE), "performed by Plaintiff on January 17, 2006" (R. at 266-93). (Pl. Brief at 14.) Although the plaintiff does not plainly connect the dots in his original brief, he apparently means to suggest that reliance on such an FCE would be improvident because he did not report any lower back pain until March 23, 2006, after the January FCE. It follows, therefore, that any subsequent reliance on the January FCE by the state agency physicians would not give a fulsome picture of the plaintiff's capacity.

The Court is not convinced that reversible error exists in the ALJ's reliance on the agency opinions because the plaintiff has not put forward evidence that it was anything other than harmless to the extent it was wrong at all. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating claimant's pain because "he would have reached the same conclusion notwithstanding his initial error"). Namely, there is no actual evidence of the effect of the plaintiff's lower back pain on his functional capacity that would demand a different conclusion about his ability to perform light work. On March 23, 2006, Dr. Eric Loudermilk noted that the plaintiff was experiencing "pain in his lower back . . . due to compensating for the pain in his foot as well as some weight gain." (R. at 320.) As far the Court can tell, there is no other mention in the record or discussion by Dr. Loudermilk as to the lower back pain's actual functional effects. (See R. at 352-55, 391-99.)

6

The plaintiff would like to surmise that the effects of lower back pain were accounted for in Dr. Loudermilk's subsequent July 20, 2006 medical source statement, making it a more accurate and current assessment relative to the state agency opinions. (R. at 352-55.) That July statement suggested that the plaintiff would not be able to meet the standing/walking demands of light work. *See id.* Not only does that July statement fail to specifically reference lower back pain, as an impairment or ancillary effect, but Dr. Loudermilk expressly identifies, as the clinical basis for his impairments, the January 17, 2006 FCE, which *predates* the alleged onset of back pain in March 2006. In other words, by its own admission, the July 2006 statement, which the plaintiff now recommends, likely suffers the same failing as alleged of the state agency opinions – that it relies principally on the January FCE. Accordingly, there is no reason to criticize the ALJ's reliance on the state agency opinions while championing the merits of Dr. Loudermilk's opinion when all such opinions were rendered after March 2006 but indicated some reliance on the January FCE.

The Court would also note that it is not even clear the extent to which the state agency opinions were based on the January FCE. As stated, the opinions were rendered after the March report concerning the plaintiff's lower back. (R. at 311, 331.) Although both assessments reference the January FCE (R. at 312, 331), it is not the exclusive evidence cited.

The Court cannot recommend that the ALJ made some sort of evidentiary error in crediting the state agency opinions.

## II.     Treating Physician

As discussed above, on July 20, 2006, Dr. Loudermilk, the plaintiff's treating physician, stated that the plaintiff had ankle/foot pain due to fracture and neuralgia, traumatic arthritis, and depression. (R. at 352-55.) Dr. Loudermilk found that he could not return to his job as a corrections officer. He said that the plaintiff experienced pain, depression, insomnia, anger, and frustration. *Id.* He stated that the plaintiff had reduced ankle range of motion, abnormal gait, sensory loss, tenderness, and impaired sleep. He said

the plaintiff's pain would frequently interfere with his attention and concentration. *Id.* He said his medications caused some mild dizziness and concentration difficulties. *Id.* He said the plaintiff could walk less than one city block before needing to rest. *Id.* The ALJ said that he could sit for one hour and stand for ten minutes each at one time. *Id.* He stated that, in an eight-hour workday, he could sit at least six hours and stand/walk for less than two hours. *Id.* He said that the plaintiff needed a job that permitted shifting positions at will from sitting or standing and would need unscheduled breaks during an eight-hour workday. *Id.* He said this would be required three to four times for ten minutes each. *Id.* The ALJ found that the plaintiff needed a cane or assistive device. He said that the plaintiff could occasionally twist, crouch/squat, and climb stairs. *Id.* He said he would miss four days of work per month. *Id.*

The plaintiff argues that the ALJ erred in failing to give this opinion of Dr. Loudermilk controlling weight. (Pl.'s Br. at 15-16.) At base, this allegation of error is substantially related to the one previously discussed, insofar as the plaintiff, as stated, views Dr. Loudermilk's opinion as being more complete in its supposed inclusion of the plaintiff's lower back related pain. The plaintiff goes so far as to proclaim that it "is clear that Dr. Loudermilk's opinion change from any earlier opinion given prior to the medical source statement *is a result of the development of Plaintiff's lower back pain and subsequent treatment thereof.*" (Pl. Brief at 17.) The plaintiff, however, cites no evidence for this assertion. And, with all due respect, Dr. Loudermilk's initial assessment of the plaintiff's lower back pain is not a serious one. There is no discussion of it in his July medical statement. (See R. at 352-55.) There are no functional limitations associated with lower back pain identified in his March notes or subsequently. (R. at 320, 391-99.) In short, the plaintiff has made more of the lower back pain than Dr. Loudermilk ever has.

That being said, Dr. Loudermilk elsewhere and consistently identifies the plaintiff as having mechanical low back pain due to compensation from his leg injury. (R. at 391-99.) And, the ALJ, of course, as part of the *de minimis* severity screening process, found the

8

limitation severe. (R. at 12.) Notwithstanding, Dr. Loudermilk never ascribes any particular functional limitations. For the first time in his July statement, without any reference to low back pain, where reference was reasonably invited and implicated (see R. at 352), Dr. Loudermilk announces debilitating limitations. It was reasonable, therefore, based on substantial evidence discussed below, for the ALJ to be suspicious of the dramatic limitations included. Moreover, the ALJ specifically found that in the records where low back pain is noted, Dr. Loudermilk also repeatedly observed that the plaintiff's pain "remains stable and well controlled" by medication (R. at 391-99). (R. at 15.)

To encourage this Court to interpret the July medical statement as being substantially influenced by the presence of lower back pain as opposed to simply an overstated functional assessment not consistent with prior medical examinations, as the ALJ concluded, is simply to ask the undersigned to make a sort of guess. In fact, as already noted, Dr. Loudermilk confesses to relying on the January 2006 FCE, which is some evidence that the lower back pain issue did not influence the July medical statement at all. (R. at 352.) The Court does not find that as a matter of law or fact, that the ALJ had no choice but to have viewed Dr. Loudermilk's assessment as being based on a more factually complete and meaningful record than other competing evidence regarding evidence of lower back pain.

As to the ALJ's treatment of Dr. Loudermilk's opinion more specifically, the Court simply finds no error. The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. §416.927(d)(2)(2004); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). A "medical opinion," is a "judgment[ ] about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). However, statements that a patient is "disabled" or "unable

to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-2p.

As already suggested, the ALJ discounted Dr. Loudermilk's July opinion because it was inconsistent with his own previous findings on exam, his prior functional capacity evaluation, and his prior opinions. (R. at 16.) Essentially, the ALJ found no basis to support the change in assessment from February 2006, when Dr. Loudermilk implicitly agreed that the plaintiff was capable in the manner described by the January FCE (R. at 15, 322), to the July medical statement, which found him more significantly limited. (See R. at 15-16.) The ALJ noted the plaintiff's complaints of lower back pain, expressed to Dr. Loudermilk, but commented, as this Court has, that he did not perform any physical examinations after the plaintiff's complaints of back pain or prescribe or recognize any related functional limitations. (See R. at 15.) Yet, the plaintiff would have had the ALJ and now this Court simply assume that the severity of recommended limitations in the July assessment must necessarily be based on the effects of lower back pain, in the relative absence of any indication by Dr. Loudermilk himself.

The fact that the plaintiff has identified other evidence or medical opinions which might support Dr. Loudermilk's July statement (see R. at, 224, 244-65) is of no moment. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *See Blalock*, 483 F.2d at 775. This is particularly true where certain other medical opinions offered by the plaintiff, like that of Dr. Samuel Capra, also predate the plaintiff's lower back pain, a fact over which the plaintiff would disqualify the evidence relied upon by the ALJ.[2] The ALJ cited substantial evidence to conclude that there

---

[2] Although, Dr. William Stewart's examination came after reports of lower back pain, again, the Court has not been directed to any place in his records which indicate that the lower back pain was a consideration in the opinion. (See R. at 379-83.) Moreover, the sheer fact that there is consistency between Dr. Stewart's and Dr. Loudermilk's opinions is

was not a well-reasoned and natural evolution to Dr. Loudermilk's assessment of the plaintiff's functional capacity. The Court will not disturb that conclusion.

Regardless of how his various objections are framed, the plaintiff's appeal comes down to his belief that his lower back pain debilitated his ability to stand and walk. There is no evidence in the record to support this conclusion.[3] To demand that the July statement be so characterized, is to beg an assumption this Court is not entitled to make. And, the record is sufficiently thin on such a theory as to fail to pose any condemnation of the ALJ for not exploring it more thoroughly.

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.

                                                s/Bruce Howe Hendricks
                                                United States Magistrate Judge

September 14, 2010
Greenville, South Carolina

---

not dispositive of the ALJ's obligations. His view that there was not a natural explanation for the change in Dr. Loudermilk's assessment was properly based on an evaluation of Dr. Loudermilk's own record of treatment. It was an internal, as opposed to an external inconsistency.

[3] Obviously, the ALJ found the lower back pain severe. The Court, however, has not been directed to evidence that Dr. Loudermilk viewed such pain as creating the sorts of *limitations* ultimately reflected in his medical statement.